IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 05-357-1 |
| v. | : | |
| | : | CIVIL ACTION |
| DENROY GAYLE | : | NO. 11-6067 |

M E M O R A N D U M

**STENGEL, J.**                                                                               June 20, 2012

     Denroy Gayle filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 asserting his attorney provided ineffective assistance of counsel in four aspects of his representation.  Gayle alleges that his attorney was ineffective for (1) failing to properly preserve his right to confrontation by declining to object to the introduction of statements made by the confidential informant, (2) failing to move to suppress the prerecorded buy money that was recovered from his person at the time of his arrest, (3) failing to pursue or negotiate a plea agreement, and (4) failing to object to two of the Court's jury instructions.  For the reasons set forth below, I will deny Gayle's petition in its entirety and refrain from issuing a certificate of appealability.

**I.      BACKGROUND**

    **A.      Factual History**

     Sergeant Matthew Lohenitz of the Easton Police Department learned that crack cocaine was being sold out of a residence located at 30 South 15th Street in Easton, Pennsylvania.  A confidential informant told Sergeant Lohenitz about the crack cocaine distribution in September of 2004.  At Sergeant Lohenitz's direction and in his presence,

the confidential informant placed a call to arrange to purchase crack cocaine from the residence. (Motion Tr. 37-40, May 31, 2006.)

At 11:40 a.m. on September 8, 2004, Sergeant Lohenitz drove the informant to a location near the house. The sergeant searched the informant to make sure he had no money, no contraband, no controlled substances, and no weapons. He gave the informant prerecorded money to make a purchase of crack cocaine. The informant left the vehicle and walked to the house. Sergeant Lohenitz drove to a parking lot directly across the street from the residence. (Trial Tr. 10-13, August 21, 2006.)

Sergeant Lohenitz observed the residence as the informant knocked on the front door. A black male answered the door and had a brief verbal and physical exchange with the informant on the front porch of the house. The black male went back inside the home and the informant walked to a pre-arranged meeting location where he got into the car with Sergeant Lohenitz and turned over a baggie. The informant told Sergeant Lohenitz that Denroy Gayle had sold him the drugs. Sergeant Lohenitz drove with the informant to another location and performed a field test on the substance in the baggie, which tested positive for crack cocaine. Sergeant Lohenitz obtained a police photo of Gayle. The informant confirmed that the person in the photograph was the person he saw and met with on the porch of the residence. (Motion Tr. 144, 45-48, May 31, 2006.)

On September 9, 2004, Sergeant Lohenitz set up a similar controlled purchase at the same residence. At approximately 7:30 p.m., Sergeant Lohenitz met with and searched the informant. He provided the informant with some prerecorded buy money. The informant approached the home while the Sergeant watched from the nearby CVS

parking lot. When the informant arrived at the residence, Gayle came out the front door and walked into the front yard toward an alleyway. He and the informant briefly talked in the alleyway, exchanged something, and then parted ways. The informant gave Sergeant Lohenitz what proved to be more crack cocaine, packaged in a "corner tie" baggie just like the previous day. Sergeant Lohenitz maintained constant visual contact with the informant throughout the entirety of this transaction. (Trial Tr. 33-37, 44, 17, August 22, 2006.)

     Sergeant Lohenitz applied for and obtained a search warrant for the residence based on the information he learned from the controlled purchases on the two previous days. On the morning of September 10, 2004, members of the Easton Police Department executed the search warrant at the residence. Gayle and members of his family, including his mother, younger brother and sister, were present when the police entered the house. Gayle was carrying $670 in cash, in small denominations, including the prerecorded buy money that had been used by the informant to purchase the crack cocaine on September 9. No other occupant of the house was found in possession of a significant amount of cash. (Trial Tr. 47-48, 51, 56, 72, 90-94.)

     The police found a digital scale in the kitchen. This digital scale was the type commonly used by drug dealers to break down drugs into smaller quantities for street sales. Subsequent testing confirmed that Gayle's fingerprints were on the scale. The police also found plastic baggies in the kitchen, the type that are commonly used to package crack cocaine. Inside the front door was a safe that contained a total of 36.2 grams of crack cocaine and an unloaded gun. The contents of the safe included a baggie

with a large piece of crack cocaine and another baggie with 29 smaller "corner tie" bags of crack cocaine. The packaging and appearance of the crack found in the safe was consistent with that of the crack Gayle sold to the informant on September 8 and September 9. The officers also found a loaded gun near the safe. (Trial Tr. 49-52, 61-65, 71-81, 99, 103, 144-45.)

### B.    Procedural History

On June 28, 2005, a grand jury in the Eastern District of Pennsylvania returned an indictment charging Gayle with one count of possession with intent to distribute five grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).

Gayle was initially represented by Benjamin Cooper, Esq. and Dina Chavar, Esq., both members of the Federal Defender Association. Gayle's attorneys filed a motion for bail, various motions seeking discovery, a motion to suppress or exclude evidence, and a motion for a writ of habeas corpus ad testificandum to secure the present of a witness in support of Gayle's pretrial motions. On December 28, 2005, I granted the Defender Association's motion to withdraw as counsel due to a conflict of interest and appointed Michael J. Engle, Esq. to represent Gayle. Attorney Engle filed additional and supplemental motions and memoranda on discovery, suppression, and evidentiary issues. Attorney Engle also responded to the government's pretrial motions, obtained the court's permission to retain a defense fingerprint expert, and submitted proposed jury

instructions.  On May 31, 2006, I held a hearing on the motions.  Following the hearing, I denied Gayle's motion to suppress physical evidence and statements but granted other defense motions in whole or in part.

     A jury-trial began on August 21, 2006.  During the trial, Gayle's stepfather testified on his behalf and stated that he had given Gayle a large amount of cash on the morning of September 10 to pay a water bill.  A defense investigator testified about his interview of an individual known as Malcolm Freeman.  The investigator introduced a written question and answer statement of his interview with Freeman, as well as an earlier letter authored by Freeman.  In these statements, Freeman claimed that he found the drugs at issue on the street near Gayle's home, and out of curiosity about what it would be like to be a drug dealer, began selling the drugs in that same area.  He stated that on the evening of September 9, he left the drugs in the safe at Gayle's home and went home to sleep, intending to retrieve the drugs in the morning.  Freeman claimed that he overslept, and when he finally arrived at Gayle's home on September 10, he learned that the police had been there and arrested Gayle.  The defense attempted to call Freeman at trial, however, I appointed counsel for Freeman and Freeman invoked his Fifth Amendment privilege not to testify.  (Trial Tr. 2-23, August 24, 2006.)

     In rebuttal, the government called Sergeant Lohenitz, who testified about the different physical appearances of both Freeman and Gayle, and that he was sure it was Gayle who met with the informant on September 8 and 9.  (Trial Tr. 5.)  Following a six-day jury trial, on August 29, 2006, a jury found Gayle guilty of all charges.

5

Attorney Engle filed a motion for judgment of acquittal and a new trial on Gayle's behalf and argued, among other things, that the evidence was insufficient to support the verdict and the court should have compelled the government to disclose the identity of the confidential informant. On March 12, 2007, I denied the motion. On May 9, 2007, I sentenced Gayle to 180 months imprisonment, a term of supervised release of five years, a fine of $1,000, and a special assessment of $300.[1]

Following the entry of judgment of the original sentence, Gayle timely filed a notice of appeal. Gayle was represented by Thomas C. Egan, Esquire on appeal and raised the following issues: the Court erred in not deviating from the crack/powder ratio in the sentencing guidelines; the Court abused its discretion in denying Gayle's motion to compel the government to disclose the confidential informant's identity; the Court erred in permitting the testimony of the government's narcotics expert; the Court erred in admitting evidence of uncharged controlled purchases; the evidence was not sufficient to sustain Gayle's conviction for the firearms offenses; and trial counsel was ineffective for failing to object to alleged hearsay statements of the confidential informant. The Third Circuit affirmed the judgment of sentence on November 5, 2010. <u>United States v. Gayle</u>, 400 Fed. Appx. 689 (3d Cir. 2010). The Third Circuit did not review Gayle's ineffective assistance of counsel claim, stating that the claim should be reserved for collateral review pursuant to 28 U.S.C. § 2255. Gayle timely filed the instant *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

---

[1] On November 20, 2011 Gayle filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582 and the 2011 amendment to the crack cocaine sentencing guidelines. On December 22, 2011, I granted Gayle's motion in part, reducing his sentence to 110 months imprisonment, but denied his request to impose a sentence below the guideline range.

## II. STANDARD OF REVIEW

A prisoner in custody may move the sentencing Court to "vacate, set aside, or correct" a sentence imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Section 2255 permits habeas relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Eakman, 378 F.3d 294, 298 (3d Cir. 2004) (citing United States v. Addonizio, 442 U.S. 178, 184 (1979)).

If the court determines that the sentence was not authorized by law, was unconstitutional, or otherwise open to collateral attack, the court must either vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. Id. at § 2255(b). Conversely, a court may dismiss a Section 2255 motion where the record shows conclusively that the movant is not entitled to relief. United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

## III. DISCUSSION

Gayle alleges that his attorney was ineffective for (1) failing to properly preserve his right to confrontation by declining to object to the introduction of statements made by a confidential informant, (2) failing to move to suppress the prerecorded buy money that was recovered from his person at the time of his arrest, (3) failing to pursue or negotiate a plea agreement with the government, and (4) failing to object to two of the Court's jury instructions.

A defendant seeking relief under § 2255 on an ineffective assistance of counsel claim must show that: (1) counsel's representation fell below an objective standard of

7

reasonableness under prevailing professional norms; and (2) the defendant suffered prejudice as a result - meaning, but for counsel's deficient performance, the result of the proceeding would have been different, i.e. the deficiency deprived the defendant of "a trial whose result is reliable."  Id.; Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)).  Here, Gayle cannot satisfy either prong of the Strickland standard for any of his four ineffectiveness arguments.

### A. Gayle's Counsel Were Not Ineffective for Failing to Preserve Gayle's Sixth Amendment Right to Confrontation.

Gayle contends that his trial counsel was ineffective for failing to pursue and preserve his Sixth Amendment right under the Confrontation Clause of the United States Constitution because his attorney failed to challenge the introduction of the confidential informant's testimony based upon Crawford v. Washington, 541 U.S. 36 (2004).  Pet'r's Mem. of Law at 7-16.  Specifically, Gayle claims that the presentation of statements made by the confidential informant deprived him of a fair trial in that he was denied his right to cross-examine the informant.  See Pet'r's Mem. of Law at 10-16.

Gayle's counsel strategically used the confidential informant's statements to Sergeant Lohenitz by acknowledging them during his opening statement when he explained to the jury, "Now, the evidence with respect to the September 8th and September 9th, what you will hear is that a detective in the Easton Police Department, employed the services of an informant, who was paid for those services.  And that supposedly this informant instructed the police, that specifically, Denroy Gayle was selling drugs out of that house."  Trial Tr. 2.27, August 26, 2007.  Attorney Engle made a

conscious decision to get out in front of the evidence of these statements by using them as a foundation for his defense to attack Sergeant Lohenitz's credibility.

During the trial, Attorney Engle repeatedly attacked the Sergeant's account of the facts and questioned why the Sergeant failed to record in police paperwork the supposedly crucial information given by the confidential informant. See Trial Tr. 127-140, 124-25, 166, 167, 169, 180, 184. Attorney Engle employed this strategy in his final closing argument which largely focused on questioning Sergeant Lohenitz's investigation and the government's inability to corroborate his testimony. As part of his closing, Attorney Engle highlighted for the jury that it did not have the benefit of hearing from the confidential informant directly to corroborate the testimony of Sergeant Lohenitz. Trial Tr. 5.72, August 28, 2006. He also questioned why the Sergeant failed to take any photographs or video footage of the narcotics purchase to paint a fuller picture that the Sergeant was not credible.

Trial counsel's decision to open the door to the informant's statements and allow the government to present the statements without objection was a reasonable tactic used to advance Gayle's trial defense strategy. Gayle's dissatisfaction with this strategic decision because it was unsuccessful is not a sufficient basis for his ineffectiveness claim. The Constitution guarantees competent representation, but it does not guarantee success. Gayle's attorney's trial decision to use the confidential informant's statements to attempt to undermine the integrity and reliability of the police investigation was reasonable and did not prejudice Gayle, given the other evidence against him. Accordingly, Gayle's claim does not support a finding of ineffective assistance of counsel.

### B.    Trial Counsel was Not Ineffective for Failing to Move to Suppress the Prerecorded Buy Money.

Gayle argues that his trial counsel was ineffective for failing to move to exclude the prerecorded buy money that was recovered from Gayle's person at the time of his arrest and the execution of the search warrant on his residence. Pet'r's Mem. of Law at 16-22. Prior to trial, Gayle filed a motion to suppress physical evidence recovered during the execution of the search warrant. In that motion, his counsel challenged the probable cause for the search warrant and the police officers' compliance with knock and announce requirements before entering the residence. If the motion had been granted, the cash seized from Gayle during the execution of the search warrant would have been excluded from evidence at trial.

During the motion hearing, Attorney Engle, in anticipation of his ultimate trial defense, vigorously cross-examined Sergeant Lohenitz on the details surrounding his recovery of the prerecorded buy money and the documentation of that recovery. Attorney Engle asked extensive questions about the flaws in the police paperwork and the seizure of the buy money. His strategy was to suppress the prerecorded buy money before trial; however, I denied his motion. Nonetheless, Attorney Engle continue to make the most of his opportunity at the suppression hearing to uncover critical weaknesses in the case. He laid the foundation for impeaching the government's primary trial witness.

At trial, Attorney Engle again made effective use of what he had accomplished at the suppression hearing. He cross-examined Sergeant Lohenitz on the process used to

seize the prerecorded buy money, pointing out several perceived flaws. Gayle now argues that Attorney Engle should have used this opportunity to exclude the evidence due to the lack of a proper chain of custody. Instead, Attorney Engle decided that a more effective strategy was to use the flawed paperwork as a means to undermine the credibility of the police account of Gayle's arrest. Gayle's attorney correctly understood that there was no lapse in the chain of custody, and instead used some of the flaws in the paperwork to undermine Sergeant Lohenitz's credibility.

Sergeant Lohentiz's testimony as the lead detective in the case established that he took custody of all of the evidence recorded during the execution of the search warrant. Both the search warrant inventory and his handwritten note on the photocopy of the prerecorded buy money corroborated his testimony and established that the buy money had been recovered from Gayle's right front pocket along with his cell phone. An attempt to exclude the buy money on the ground Gayle now suggests would have inevitably failed. Therefore, I find that Attorney Engle's strategic decision not to challenge the admissibility of the buy money on the basis of chain of custody was reasonable, did not prejudice the defendant, and was therefore not ineffective.

### C. Trial Counsel was Not Ineffective for Failing to Pursue a Plea Agreement with the Government.

Gayle asserts that his trial counsel was ineffective because he failed to pursue or negotiate a guilty plea agreement with the government. Pet'r's Mem. of Law at 22-27. Specifically, Gayle contends that Attorney Engle failed to fully advise him on the

potential sentence he might face by going to trial as opposed to pleading guilty. Pet'r's Mem. of Law at 25.

However, Gayle's decision to go to trial was not a product of ineffective representation, rather, Gayle insisted on his desire to maintain his innocence. Attorney Engle unequivocally states that "Gayle never instructed [him] to negotiate any kind of plea agreement." Resp. Ex. A. In fact, "Gayle was always focused on his trial defense and the strategies he wanted employed by his counsel on his behalf." Id. Gayle made the decision to go to trial and "[a]t no time did Gayle ever express an interest in accepting responsibility via a guilty plea." In his petition, Gayle admits that "Mr. Engle asked petitioner if he wanted to cooperate with the government and received a direct answer as petitioner's response, which was he did not . . ." Pet'r's Mem. of Law at 22-23.

Attorney Engle's affidavit makes it clear that he advised Gayle of his options regarding pleading guilty to the charges. However, Gayle insisted he wished to proceed to trial. Attorney Engle was not ineffective because Gayle insisted he was innocent and wished to proceed to trial. See United States v. Perez, 2002 LEXIS 1974553, *5 (E.D. Pa. Aug 27, 2002) ("An attorney is not obligated to initiate a plea discussion with the government in every case . . . Moreover, whether or not to open plea discussions with the government is a strategic decision ordinarily not second-guessed by a reviewing court.") (internal citations omitted).

Gayle could have decided to plead guilty even without an agreement of the government. Instead, he chose to pursue his presentation of a fabricated defense -- a choice for which only Gayle is to blame. Because the record establishes that Gayle

12

wanted to proceed to trial rather than plead guilty, Gayle's claim of ineffective assistance of counsel fails.

### D. Trial Counsel was Not Ineffective for Failing to Object to the Court's Jury Instructions.

Gayle's final claim is that his counsel was ineffective for failing to object to my jury instructions about the evidence the jury could consider when deciding his § 924(c) charge. Pet'r's Mem. of Law at 27-29. Specifically, Gayle contends that I gave the jury instructions regarding the evidence required to find him guilty of the 924(c) charge and that I instructed the jury, "all you have to do is prove the defendant sold drugs on the 8th and the 9th. Then that connects him to the drugs and guns on the 10th because all drug dealers carry guns it's like a chain everything connects together." Pet'r's Mem. of Law at 28.

Contrary to his recollection, I never gave any such instruction. Instead, I adapted the instruction from the Ninth Circuit Model Jury Instructions since there was not a standard Third Circuit Instruction then available. According to the Trial Transcripts, I instructed the jury that in order for the defendant to be found guilty of possession of a firearm in furtherance of a drug-trafficking crime, the government was required to prove beyond a reasonable doubt "that the defendant committed the drug-trafficking offense charged in Count 2 of the indictment . . . that the defendant possessed a firearm . . . and, that the defendant possessed a firearm in furtherance of a drug-trafficking offense he committed as charged in Count 2." Trial Tr. 5.137, August 28, 2006. This instruction was proper and counsel made a reasonable decision not to object to it.

Gayle also contends that I instructed the jury that, because Malcolm Freeman did not appear in person and take the stand, "don't give defense witness Mr. Freeman's statements to (sic) much weight. A notarized statement doesn't mean anything it is not like he came up here and took the stand like you seen the government's witness do." Pet'r's Mem. of Law at 28. Again, Gayle inaccurately portrays my instruction to the jury.

During deliberations, the jury requested the two written statements of Malcom Freeman that were read into the record by the defense investigator. I permitted those statements to be given to the jury. Counsel for the government asked the court to clarify for the jury a paragraph in the second writing that read, "the person making the statement – the person signing the statement – understand that he is making that statement with knowledge of the penalties under Pennsylvania law for unsworn falsification to authorities . . ." Trial Tr. 6.13. I instructed the jury not "to be concerned with that Pennsylvania statute or what is says or what the penalties for unsworn falsification would be." Trial Tr. 6.13. I explained that the statement was unsworn, not given under oath and that the paragraph should not be considered for any other purpose other than to say that the person signing it verified that it was true and correct. I made it clear that it was the jury's decision to decide whether Freeman's statement was believable or not.

Gayle maintains that my instruction was prejudicial in that it "destroyed the credibility of Freeman's affidavit which help (sic) the government's case and removed the burden from the government and placed it on the defendant to prove his innocence of possessing the guns for the 924(c) and 922(g) Counts." Pet'r's Mem. of Law at 29.

Contrary to his belief, Gayle's claim fails because my instruction explained that Freeman's statement was not given under oath and reminded the jury that it was their decision whether or not to accept the statement as true. The instruction did not shift the burden to the defendant to prove his innocence. Because this instruction was proper, it did not warrant an objection from Gayle's counsel. The instruction was reasonable and in no way prejudiced Gayle. Accordingly, Gayle's final contention that his trial counsel was ineffective for failing to object to my jury instruction fails.

### E. Gayle's Petition Does Not Merit a Certificate of Appealability.

Gayle fails to establish a substantial showing of the denial of a constitutional right. In order for the Court to issue a certificate of appealability, Gayle must establish that he has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2255(c)(2). To present a substantial showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons set forth above, Gayle has not come close to making a substantial showing of the denial of a constitutional right. Accordingly, I will not issue a certificate of appealability because there is no merit to the defendant's claims.

## IV.    CONCLUSION

For the reasons set forth above, I find there was no ineffective assistance of counsel and no violation of the defendant's Sixth Amendment rights. Accordingly, I will deny Gayle's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §

2255. Because the defendant failed to make a substantial showing of the denial of a constitutional right, I will decline to issue a certificate of appealability.

An appropriate Order follows.